UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                 )
JANE DOE,                        )
                                 )    C.A. No. 19-100 WES
          Plaintiff,             )
                                 )
     v.                          )
                                 )
BROWN UNIVERSITY,                )
                                 )
          Defendant.             )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Stemming from Brown University's ("Brown") dismissal of Jane Doe ("Jane"), this case is before the Court on Brown's Motion to Dismiss ("Mot. to Dismiss"), ECF No. 12. Brown moves to dismiss Jane's Complaint in full, a motion the Court DENIES for the following reasons.

I. Background

A cursory review of the relevant facts follows: In 2011, Jane started Brown's exclusive eight-year program in pursuit of both an undergraduate and medical degree. Compl. ¶¶ 2, 9. While marshaling accolades and maintaining an impressive record during her undergraduate schooling, Jane's record began to blemish at Brown's medical school, The Warren Alpert Medical School. Id. ¶¶ 3-4, 22. There, Jane received some negative professionalism evaluations and informal criticisms, four formal Professionalism

Report Forms ("Professionalism Report")[1], and appeared before the Medical Committee on Academic Standing and Professionalism ("MCASP") several times. Id. ¶¶ 25, 27, 29, 31-34, 47, 55-57, 60.

While she completed her undergraduate degree, Jane's doctor diagnosed her with depression and anxiety disorder; later, in medical school, Jane's doctor also diagnosed her with Attention Deficit Hyperactivity Disorder ("ADHD"). Id. ¶¶ 2-6. Amid her professionalism issues, Jane pursued treatment for her ADHD and engaged — at Brown's behest — with a learning specialist. Id. ¶¶ 36, 40. After receiving a neurophysiological exam, Jane sought medication on her doctor's recommendation. Id. ¶¶ 40, 45.

Jane's four formal Professionalism Reports may be summarized as follows: First, Jane's professor reported she displayed unprofessional behavior, including a perceived lack of interest and other "odd" behavior, id. ¶¶ 29-31; second, Jane's VA Medicine Clerkship reported she failed to timely complete a mandatory IT training, id. ¶ 33; third, the Assistant Dean of Student Affairs, Dean Jordan White, reported she missed a scheduled meeting, id. ¶ 47; and fourth, another of Jane's professors reported she missed an examination, told him she missed it because of a physical

---

[1] A Professionalism Report Form is a vehicle Brown faculty members or students use to report violations of Brown's professionalism policy. Compl. ¶ 29.

illness, and later revealed she missed it because of a depressive episode, id. ¶¶ 55-57.

Having discussed Jane's issues before[2], the MCASP met again to discuss Jane's third and fourth Professionalism Reports. Id. ¶ 60. Ahead of the meeting, Dean White asked Jane if she was selling or using cocaine, saying this may explain her behavior. Id. After Jane denied this, Dean White took her word for it, but relayed that she would be there for Jane if she admitted it. Id. Dean White did not present this issue to the MCASP. Id.

Jane's learning specialist wrote a letter to the MCASP explaining that Jane's recently diagnosed ADHD might underlie her behavioral issues. Id. ¶¶ 58, 61. Still, the MCASP voted to dismiss Jane from the medical school. Id. ¶ 62. Jane received formal notice of her dismissal by letter, which read

> [t]he Committee had significant concerns about the fact that you were dishonest to a faculty member about your reason for missing the OSCE. At the meeting, the Committee reviewed all of the professionalism forms that had been filed about you, letters to you from me about previous actions of MCASP, and a review of your statement that included your explanations as to the previous and latest professionalism issues. After careful deliberation, the Committee voted to dismiss you from the Alpert Medical School.

Id. ¶ 63.

---

[2] Jane appeared before the MCASP for professionalism concerns on other occasions. See infra p. 2.

Jane appealed her dismissal, attending yet another MSCAP meeting.  Id. ¶¶ 66-71.  Her learning specialist again submitted a letter on her behalf, as did her diagnosing doctor and her treating physician.  Id. ¶¶ 68-70.  Jane alleges that at this meeting she was asked problematic questions, including:  "How long have you been lying in your medical career and have you lied in the past to get away with things?"; "Why did you think making up a detailed lie was a good idea?  How do we know you haven't done it in the past?  How do you know you won't do it in the future?"; and "You understand that mental illness isn't an excuse for lying.  You agree with that, right?"  Id. ¶ 71.  The MCASP denied Jane's appeal, upholding her dismissal.  Id. ¶ 72.

Jane's dismissal is at the root of her allegations against Brown.  She brings six claims: (1) Title III of the ADA, 42 U.S.C. § 12182; (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (3) Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1; (4) Intentional Infliction of Emotional Distress; (5) Breach of Contract; and (6) Breach of the Implied Covenant of Good Faith and Fair Dealing.  Brown moves to dismiss each.

II.  Standard of Review

In deciding the present motion, the Court must answer "whether—taking the facts pled in the Complaint as true and making all reasonable inferences in favor of the plaintiff—[she] has

4

stated a claim that is 'plausible on its face.'" Doe v. Brown Univ., 166 F. Supp. 3d 177, 184 (D.R.I. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009)). In doing so, the Court must "differentiate between the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)", and then "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations and quotation marks omitted).

III. Discussion

    A. Discrimination Claims

Analyzing the first three claims in tandem[3], the Court holds that Jane has stated plausible claims for relief. Pursuing two theories of liability, Jane claims Brown dismissed her (1) because of her disability; and (2) without providing her reasonable accommodations. See Compl. ¶¶ 79-81. None of Brown's arguments in response warrants dismissal.

First, a review of Jane's Complaint debunks Brown's argument that it dismissed her for conduct violations (and not because of

---

    [3] The parties agree that the analysis under these causes of action mirror each other where the requirements of Section 504 of the Rehabilitation Act and RICRA are "parallel" to and "interpreted substantially identically" to those of the ADA. Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 152 n.13 (1st Cir. 1998); see also Katz v. City Metal Co., 87 F.3d 26, 31 n.4 (1st Cir. 1996)).

her disability). See Driscoll v. Bryant Univ., 393 F. Supp. 3d 153, 159 (D.R.I. 2019) (explaining that a plaintiff must prove "(1) [she] has a disability as defined by the statutes, (2) [she] was otherwise qualified for the program, (3) the statutes apply to [Brown], and (4) [Brown] discriminated against [her] as an individual with a disability (for example, failing to provide a reasonable accommodation)") (internal citation and quotation marks omitted). Jane alleges that all her at-issue behavior stems from her disability, blurring the line between conduct issues and disability-related issues. See, e.g., Compl. ¶¶ 53-57 (alleging she missed her exam because she was in the middle of a depressive episode and withdrawing from her ADHD medication). The Court agrees with Jane that her behavior cannot be readily compartmentalized, especially at this early stage.

Next, Brown's argument that Jane only requested a "retroactive" accommodation at her final MCASP hearing is unpersuasive where it incorrectly characterizes her allegations. See Saad v. Hexagon Metrology, Inc., C.A. No. 17-202-JJM-LDA, 2019 WL 2929624, at *3 (D.R.I. July 8, 2019) (noting that a "failure to offer an accommodation is an essential element of an accommodation claim[.]"). Jane pleaded that, although initially resisting a proposal to take a year off, she succumbed the next day, agreeing in mid-May to take a year off starting in October 2018. Compl. ¶¶

52, 55.  Jane therefore sufficiently pleaded that she requested a
prospective accommodation.

Last, the Court's rejection of Brown's argument that it
dismissed Jane purely for conduct reasons guts Brown's final
argument that Jane failed to plead she was otherwise qualified for
the program.[4]  See Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19,
22 (1st Cir. 1991) ("An otherwise qualified person is one who is
able to meet all of a program's requirements in spite of his
handicap." (quoting Se. Cmty. Coll. v. Davis, 442 U.S. 397, 406
(1979))).  Jane plausibly pleaded she was otherwise qualified,
especially because reasonable accommodations can render an
otherwise unqualified student qualified.  See Driscoll, 393 F.
Supp. 3d at 159 ("When determining if a plaintiff is otherwise
qualified, 'it is necessary to take into account the extent to
which reasonable accommodations that will satisfy the legitimate
interests of both the school and the student are (or are not)
available and, if such accommodations exist, the extent to which
the institution explored those alternatives.'" (quoting Wynne v.

---

[4]  The parties dispute whether "otherwise qualified" applies
to all Title III claims.  This distinction is of no consequence.
Bercovitch, 133 F.3d at 154 ("We find little difference in this
distinction, because many of the issues that arise in the
'qualified' analysis, also arise in the context of the 'reasonable
modifications' or 'undue burden' analysis.  That is, if more than
reasonable modifications are required of an institution in order
to accommodate an individual, then that individual is not qualified
for the program.").

Tufts Univ. Sch. of Med., 976 F.2d 791, 792 (1st Cir. 1992))).

Jane also plausibly pleaded that Brown treated her differently

than other students.  See Compl. ¶ 32 (alleging Jane received a

Professionalism Warning after her first Professionalism Report);

id. ¶ 33 (alleging Jane received a Professionalism Report while

others did not).  Jane is entitled to discovery on these issues

and Brown's motion is therefore premature.

B.   Contract-Based Claims

Nor do any of Brown's attacks on Jane's contract-based claims

justify dismissal.  These claims derive from what Jane submits are

two enforceable contracts: the Discrimination and Harassment

Policy and the Medical Student Handbook.  See Compl. ¶ 100; see

also Doe v. Brown Univ., 943 F.3d 61, 67 (1st Cir. 2019) ("Under

Rhode Island law, the relationship between a student and a private

university is based in contract."); Driscoll, 393 F. Supp. 3d at

157-58 (appreciating that student-school contracts are unique, and

strict adherence to contract law is not required).

Reminiscent of its earlier argument, Brown argues that it did

not dismiss Jane because of professionalism concerns (which would

trigger a procedure outlined in the Medical Student Handbook).

Rather, Brown asserts that it dismissed Jane because of her

egregious behavior (i.e., lying to her professor), bypassing

certain procedural steps.  Brown again overplays its hand at this

early stage.  As excerpted in the Complaint, Jane's dismissal

letter does not pinpoint one reason for her dismissal. See Compl.
¶ 63. Instead, it discusses concerns about Jane's dishonesty, but
also references a review of all Jane's professionalism
infractions. Id.

Finding none of Brown's other arguments — including those
related to its Discrimination and Harassment Policy — persuasive
at this stage, the Court denies Brown's motion. Jane's claim that
Brown breached the implied covenant of good faith and fair dealing
survives by association. Id. ¶¶ 107, 109, 110; see Doe v. Brown
Univ., 327 F. Supp. 3d 397, 418 (D.R.I. 2018).

C.   Intentional Infliction of Emotional Distress

Finally, although a close call, the Court also denies Brown's
motion as to Jane's claim of intentional infliction of emotional
distress ("IIED"). Here, Jane must plausibly allege Brown engaged
in extreme and outrageous conduct that is "so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community." Doe, 327 F. Supp. 3d at
414 (quoting Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1090
(R.I. 2004)). Jane alleges Brown expelled her without providing
reasonable accommodations or making reasonable modifications for
her disability; required her to answer disrespectful and mocking
questions about her mental illness; told her that mental illness

is not an excuse for lying; and asked her if she was a cocaine dealer and user. Compl. ¶ 96.

Making all reasonable inferences in Jane's favor, the Court concludes that Jane has pleaded facts rising to this high standard, especially those facts arising from Brown's questioning of Jane. See Compl. ¶ 60; see also Doe, 327 F. Supp. 3d at 414 (declining to dismiss claim of IIED where Brown allegedly engaged in a "pattern or practice of gender-biased and/or racially motivated actions toward [the plaintiff]") (internal citation omitted). The Court is also satisfied that Jane has pleaded facts to support the remaining elements of IIED. See Norton v. McOsker, 407 F.3d 501, 510 (1st Cir. 2005) (summarizing that a claim of IIED required proving intentional or reckless disregard of probability of causing emotional distress; extreme and outrageous conduct; causal connection between wrongful conduct and emotional distress; and severe emotional distress); see also Vallinoto v. DiSandro, 688 A.2d 830, 839 (R.I. 1997) (recognizing that, in Rhode Island, a plaintiff must also prove physical symptomatology). While Brown claims Jane does not plausibly allege Brown acted either intentionally or recklessly, the Court disagrees.

IV.  Conclusion

The Court thus DENIES Brown's Motion to Dismiss.


IT IS SO ORDERED.

_William E. Smith_
William E. Smith
District Judge
Date: March 11, 2020