UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JANE DOE,<br>    Plaintiff,<br><br>v.<br><br>BROWN UNIVERSITY,<br>    Defendant. | )<br>)<br>)<br>)<br>)   C.A. No. 19-cv-100-JJM-PAS<br>)<br>)<br>)<br>) |

ORDER

Plaintiff Jane Doe, a former student at the Warren Alpert Medical School at Defendant Brown University ("Brown"), has sued Brown after it dismissed her from its academic program for unprofessional conduct. During her time at Brown, Ms. Doe was diagnosed with ADHD and suffered from depression and now alleges that Brown discriminated against her based on her disability in violation of Title III of the Americans with Disability Act, 42 U.S.C. § 12182; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1. ECF No. 1. She also brings common-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. *Id.*

Brown now moves for summary judgment, asserting that the facts in support of Brown's defense to the claims are undisputed and asking the Court to dismiss Ms. Doe's case. ECF No. 58.[1] "The court shall grant summary judgment if the

---

[1] Brown filed a redacted version of its Motion for Summary Judgment. ECF No. 58. The unredacted version of the motion was filed under seal. ECF No. 62.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

After reviewing the briefing and engaging in extensive arguments with the parties, the Court DENIES Brown's motion. ECF No. 58.

## I. FACTS

This case is incredibly fact intensive and many of those facts–some material and others not–are highly disputed. The Court will briefly recount the facts that are material for the disposition of this motion.

Ms. Doe performed well through her undergraduate education at Brown and during her first two years of medical school, receiving positive professionalism evaluations as well. After that, Ms. Doe had multiple disciplinary incidents during her remaining time at Brown. She received her first Professionalism Form[2] ("Form") in November 2017. She was referred to the Medical Committee on Academic Standing and Professionalism ("MCASP") even though according to Brown's policy, one Form rarely triggers a referral. Brown created another Form after the fact for incidents occurring the previous two years; Ms. Doe alleges she never received this

---

[2] A Professionalism Form is a tool that the MCASP uses to document issues of professionalism where a student does not meet expectations in the realm of professional behavior. Policy No. 03-05.02: Professionalism and Medical Student Behavior (LCME Standard 3.5).

Form and had only received generally positive evaluations during this period. As a result, MCASP placed her on "Professionalism Warning" and she had to make a plan to remedy these issues.

During her third year, Brown referred Ms. Doe for a neuropsychological evaluation with its Learning Specialist after she showed some behavioral issues. The Learning Specialist assessed her with "a textbook case" of ADHD. She wrote to MCASP that "punishment for [Jane's] unprofessional behavior is premature" and she should be "given every opportunity to understand [her ADHD] and to receive treatment." MCASP wrote to Ms. Doe, acknowledging that her ADHD may be contributing to her professionalism issues and encouraged her to follow prescribed treatment. Brown sent Ms. Doe to an expert, Dr. Margaret DiCarlo, in May 2018 for another evaluation. Dr. DiCarlo also concluded that she had ADHD along with depression and anxiety and prescribed medication. The Learning Specialist and Dr. DiCarlo relayed to Brown their diagnoses and opinions that Ms. Doe could be successfully treated for her behaviors.

That same month, Ms. Doe was discussing a leave of absence with a Brown dean and her advisor, Dr. Jordan White. He encouraged her to take an immediate leave of absence ("LOA"), but Ms. Doe wanted to defer it until October or November so that she could remain on the same track as her classmates. Ms. Doe claims that she would take the leave immediately, but Ms. Alexandra Morang-Jackson, Dr. White's colleague, recommended that she wait until the fall.

3

Ms. Doe started her medication as prescribed and, after feeling like it was not effective, her doctor increased the dosage twice. The increased medication ultimately caused her mental condition to significantly worsen. Ms. Doe went to health services because of insomnia. She stopped the ADHD medication and took Benadryl to sleep. The next day, Ms. Doe missed an exam and lied to her professor that she was in the hospital with a kidney infection. After her professor pressed her for a hospital note, she confessed that she lied and was not physically ill but experiencing anxiety, sleeplessness, and depression as a side effect of her new ADHD medication. She told her professor and other faculty members that she did not disclose the details of her depression and anxiety for fear that it would diminish her reputation because of the stigma around mental illness. MCASP issued another Form on June 12.

Ms. Doe sent a letter to the MCASP asking for an immediate medical LOA. Dr. White emailed the financial aid office at Brown saying the Ms. Doe would need to take an immediate leave rather than wait until the fall. Around this same time period, Dr. White questioned Ms. Doe about a rumor that she was dealing cocaine, which she denied and he accepted without further questioning or report to the MCASP. Two days later, MCASP denied her request and instead dismissed her from medical school. Ms. Doe appealed her dismissal, including with her appeal more letters of support from her psychiatrist, Learning Specialist, and Dr. DiCarlo. Dr. Jack Elias, Dean of the Medical School, granted her appeal in light of the additional information and referred the matter back to MCASP.

MCASP reconvened in August and the Chair, Dean Allan Tunkel said the only two options would be to censure her or dismiss her. Ms. Doe again asked for an immediate LOA; instead, MCASP dismissed her. Ms. Doe appealed again a month later and Brown denied her appeal.

## II.   DISCUSSION

The law the Court is to apply here is generally not in dispute. The Court's brief discussion of the guiding legal principles and its highlighting of disputed facts follows.

### A.   ADA, RICRA, and Rehabilitation Act Claims[3]

Ms. Doe argues at length in her opposition that Brown discriminated against her by making stereotypic assumptions and misconceptions based on her disability in violation of the ADA and Section 504. This basis for her suit does not appear in her Complaint (ECF No. 1) nor was it addressed during the disposition of the Motion to Dismiss (ECF No. 16). Discovery is now complete, so the Court finds that she is "not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment." *Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006).

What remains then is Ms. Doe's reasonable accommodation claim. Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

---

[3] The analysis under these causes of action mirror each other where the requirements of Section 504 of the Rehabilitation Act and RICRA are "parallel" to and "interpreted substantially identically" to those of the ADA. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 151 n.13 (1st Cir. 1998); *see also Katz v. City Metal Co.*, 87 F.3d 26, 31 n.4 (1st Cir. 1996)).

disability who is an applicant or employee, unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the [entity's] business." *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007) (quoting 42 U.S.C. § 12112(b)(5)(A)). "[A] showing of discriminatory intent or animus is not required in cases alleging a failure to accommodate." *Enica v. Principi*, 544 F.3d 328, 339 (1st Cir. 2008) (citing *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999)).

"In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must 'produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the ADA, (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff]'s disability, did not reasonably accommodate it.'" *Freadman*, 484 F.3d at 102 (quoting *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1st Cir. 2003)). The "duty to provide a reasonable accommodation is a continuing one, however, and not exhausted by one effort." *Ralph v. Lucent Tech., Inc.*, 135 F.3d 166, 172 (1st Cir. 1998).

After reviewing the extensive briefing and considering the parties' oral arguments, the Court finds that summary judgment is not proper because both parties have highlighted disputed issues of material fact on which a jury should deliberate and decide. There does not appear to be a dispute over whether Ms. Doe was disabled but there are many disputes underlying the second and third elements. The Court need not recite all the disputed facts precluding summary judgment but

6

finds the following material facts to be disputed as to whether she would have been able to adhere to the Brown program with a reasonable accommodation. As to the second element, a jury should weigh in on:

- all credibility issues rooted in Ms. Doe's pattern of alleged dishonesty–whether Ms. Doe's fall back of lying was how she coped with her mental illness or was a character flaw that doomed her participation in Brown's program;

- whether Ms. Doe could have met the program's requirements with an accommodation and whether she could fully participate in the program after considering expert testimony opining that her behaviors could have been (and were in fact later) addressed during a LOA;

- whether Brown was entitled to deference in its educational decisions and was justified in dismissing Ms. Doe because she did not meet Brown's professional standards; and

- whether Brown knew Ms. Doe had ADHD, asked for a LOA, and ignored its Learning Specialist, neuropsychologist, and appointed expert who all saw Ms. Doe and said she could be treated, choosing to dismiss her instead of accommodating her disability.

As to the third element of whether Brown reasonably accommodated her ADHD, the Court finds that a jury should weigh in on, among other disputes:

- the date that Brown first learned of Ms. Doe's disability and the acts it took in response;

7

- the reasonability of Brown's actions or failures to act on Ms. Doe's assertion of her disability;

- whether Brown's offer to Ms. Doe a take an immediate LOA that she initially declined, opting to defer it until the fall, was an adequate reasonable accommodation;

- Both parties' credibility surrounding disputes about whether Ms. Doe intended to take an immediate LOA or whether she planned to wait based on her own needs or on the advice of a Brown dean; and

- whether the LOA accommodation was reasonable after the lies Ms. Doe admittedly told in June 2018.

Because these facts are disputed, summary judgment is not appropriate. The Court denies Brown's Motion for Summary Judgment as to Counts I, II, and III.

### B.   Intentional Infliction of Emotional Distress

"To create liability for intentional infliction of emotional distress in Rhode Island, '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Doe v. Brown Univ.*, 43 F.4th 195, 209 (1st Cir. 2022) (quoting *Swerdlick v. Koch*, 721 A.2d 849, 862 (R.I. 1998)). A plaintiff must also show some "physical symptomatology resulting from the alleged improper conduct." *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I. 1997) (citing *Reilly v. United States*, 547 A.2d 894, 898 (R.I. 1988)).

8

The Court finds that a jury should weigh, among other disputes:

- whether Dr. White's questioning of Ms. Doe about dealing cocaine could appear to evidence a reckless disregard for the distress likely to be caused;

- whether accusing Ms. Doe of drug dealing while she was already under scrutiny for her performance was outrageous considering Brown's position of authority over Ms. Doe and her vulnerability in the relationship. *See Russell v. Salve Regina Coll.*, 649 F. Supp. 391, 402 (D.R.I. 1986); and

- whether Brown's conduct was outrageous because it continued to discipline her for professionalism issues that arose while she was treating for her ADHD and depression even faced with medical and learning expert opinions that she needed an opportunity to understand her new diagnosis and receive treatment.

These jury questions preclude summary judgment on the intentional infliction of emotional distress claim. Therefore, the Court denies Brown's Motion for Summary Judgment on Count IV.

### C. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

It is well established under Rhode Island law that a student-university relationship is based on contract the terms of which are typically contained in a

9

university's student handbook. *Doe v. Brown Univ.*, 943 F.3d 61, 67 (1st Cir. 2019). The elements for a breach of that contract are proof that a contract exists, a breach, and damages resulting from the breach. *Id.* (citing *Petrarca v. Fid. and Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). "To fend off summary judgment, however, she need show only that there is a genuine dispute of material fact that she could establish all of the necessary elements of the alleged breach." *Id.* (citing *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 60 (1st Cir. 2016).

Again, the Court need not recite all the disputed facts precluding summary judgment as to these contract-based claims but finds that a jury should weigh and decide, among other disputes:

- whether Brown followed its disciplinary procedures; specifically, whether Brown created a Form after the fact for infractions during Ms. Doe's first two years of medical school and used that Form as the basis for escalating her discipline; and

- whether Ms. Doe's conduct was "particularly egregious" as set forth in the handbook provision where Brown can bypass its process and dismiss a student for a single incident if it was "particularly egregious."

These material disputes of fact as to whether Brown breached the contract and covenant of good faith and fair dealing precludes summary judgment. The Court denies Brown's Motion for Summary Judgment as to Counts V and VI.[4]

---

[4] A claim for breach of the covenant of good faith and fair dealing is also rooted in whether Brown's actions were arbitrary and unreasonable. *See Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 418 (D.R.I. 2018).

## III.  CONCLUSION

There are many disputes over material facts and how the facts apply to the law as to Ms. Doe's six claims against Brown that require a jury's consideration and determination. Thus, the Court DENIES Brown's Motion for Summary Judgment. ECF No. 58.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 9, 2024

11